ROBIN HERZOG,

        **Plaintiff,**

                                 **Civil Action 2:16-cv-244**

vs.                                **Judge James L. Graham**

                                 **Magistrate Judge Kimberly A. Jolson**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Robin Herzog, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff protectively applied for benefits on May 13, 2013, alleging disability since December 3, 2012, due to a number of ailments. (*See generally* Doc. 13, Tr. 182–88, 199, 214, 273). Plaintiff's last-insured date is December 31, 2017. (*Id.*, Tr. 27).

After initial administrative denials of Plaintiff's claims, an ALJ heard her case on April 23, 2014. (*Id.*, Tr. 44–78). On August 1, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, Tr. 23–42). On January

1

21, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.*, Tr. 1–6).

Plaintiff filed this case on March 18, 2016, and the Commissioner filed the administrative record on July 11, 2016. (Doc. 13). Plaintiff filed a Statement of Specific Errors on August 14, 2016 (Doc. 14), the Commissioner responded on October 14, 2016 (Doc. 17), and Plaintiff replied on November 3, 2016 (Doc. 18).

### A.      Personal Background

Plaintiff was born in April 1961 (Doc. 13, Tr. 182), and she was 50-years-old on the alleged onset date of disability. (*Id.*, Tr. 37). She has a high school education and work experience with Honda as an associate, production staff member, and coordinator. (*Id.*, Tr. 200).

### B.      Testimony at the Administrative Hearing

Plaintiff testified at the administrative hearing that she stopped working in December 2012, due to being "overwhelmed." (*Id.*, Tr. 49). Specifically, Plaintiff testified that she has migraines, insomnia, and hormone issues. All this caused her to miss "quite a bit of work," and she found it difficult to perform her supervisor position. (*Id.*). She testified she was also dealing with her son returning from military service with PTSD, and she has a vaginal mesh, which prolapsed in 2005, needed repair in 2008, and still causes her pain. (*Id.*, Tr. 49–50). She additionally testified that she has all-over body pain that has been diagnosed as fibromyalgia or maybe rheumatoid arthritis. As to these two ailments, she testified that she was going to obtain a second opinion from Dr. Shereen Hashmi. (*Id.*, Tr. 50). She described her pain as "so bad

that I have to take Percocet every . . . six hours." She also takes Lyrica but noted "it's not working at all." (*Id.*, Tr. 50, 68).

Plaintiff had radial tunnel surgery in 2010. She testified that while the "nerve situation" from this surgery has improved, she still has weakness and difficulty performing tasks that require fine motor skills. (*Id.*, Tr. 67). She wakes up with stiffness and pain in her fingers on a daily basis, and fibromyalgia causes pain in her wrists, fingers, elbow, lower back, knees, and ankles. (*Id.*, Tr. 68). She noted, "I can't hardly do anything now. The pain is just too much." (*Id.*).

The vocational expert ("the VE") testified that a hypothetical person of similar age and education as Plaintiff with a limitation of light exertional work could not perform Plaintiff's past job but could perform other jobs available in the national economy such as a mail clerk, laundry worker, and injection molding machine tender. (*Id.*, Tr. 74–75). In addition, the VE testified that a hypothetical person of similar age and education as Plaintiff with an exertional level changed to sedentary work would have no transferable skills. (*Id.*, Tr. 75–76). Additionally, the VE testified that if an employee were to miss three days per month or would be off task twenty percent of the time, no sustainable substantially gainful employment would be available. (*Id.*, Tr. 76).

### C.    Relevant Medical Evidence

#### 1.    Primary Care Physician Delia J. Herzog, M.D.

Plaintiff began treating with her primary care physician, Dr. Delia J. Herzog, in August 2006, with complaints of chronic neck pain, migraine headaches, stress, and anxiety. (*Id.*, Tr. 366). Plaintiff continued to treat with Dr. Herzog past the administrative decision. (*Id.*, Tr. 7,

12, 329–77, 552–74, 658, 719, 724–26). Plaintiff's complaints during her treatment included: body aching all over (*id.*, Tr. 364, 556); "tired all the time," pain around her ankles and wrists (*id.*, Tr. 362); hiatal hernia (*id.*, Tr. 354); headaches/migraines (*id.*, Tr. 12, 331, 335, 340, 348, 354, 458, 462); anxiety, increased due to her son serving in the military (*id.*, Tr. 352); pain in her right arm despite having gone through therapy (*id.*, Tr. 346); irregular menses (*id.*, Tr. 342, 349); insomnia and sleep disturbances (*id.*, Tr. 472); diarrhea, depression, and headaches (*id.*, Tr. 464); neck pain (*id.*, Tr. 456); pelvic pain (*id.*, Tr. 567); low back pain and diarrhea (*id.*, Tr. 558).

Dr. Herzog diagnosed insomnia, depression, and situational anxiety (*id.*, Tr. 333–34); epigastric pain, insomnia, depression, situational anxiety, and migraine (*id.*, Tr. 329–30); cervical radiculopathy (*id.*, Tr. 457); and fibromyalgia (*id.*, Tr. 12, 556–57). She prescribed medications such as Wellbutrin for Plaintiff's depression, Amerge for migraines (*id.*, Tr. 335); melatonin for sleep issues (*id.*, Tr. 473); Percocet (*id.*, Tr. 457, 567); and medication for diarrhea (*id.*, Tr. 558).

On April 27, 2014, Dr. Herzog opined that Plaintiff could work no hours in a day and would likely be absent due to medical impairments or treatment 31 days per month. (*Id.*, Tr. 679). Plaintiff could walk 2 hours during an 8-hour day, for 20 minutes at a time, secondary to pelvic pain, fibromyalgia, and osteoarthritis. (*Id.*). Plaintiff could sit for 45 minutes at a time, up to 3 hours total in a workday, secondary to pelvic pain. (*Id.*, Tr. 680). Plaintiff could carry one to two pounds frequently and eight pounds occasionally, secondary to radial tunnel disease and osteoarthritis. (*Id.*). Plaintiff could occasionally balance, stoop, and kneel, but never climb, crouch, or crawl, secondary to pelvic pain, low back pain, and osteoarthritis. (*Id.*, Tr. 680). Dr. Herzog reported that Plaintiff also suffers from fatigue and depression due to fibromyalgia and being diagnosed with major depressive disorder. (*Id.*, Tr. 682).

## 2. Innovative Therapy: Jennifer Errington, L.I.S.W.

Plaintiff sought mental health counseling with social worker, Jennifer Errington, a licensed independent social worker, on December 11, 2012. Plaintiff reported symptoms of depression, PTSD, and acute stress disorder, and reported a multitude of physical health issues. (*Id.*, Tr. 668). Ms. Errington diagnosed Acute Stress Disorder and Major Depressive Disorder (with anxious distress). (*Id.*, Tr. 668).

Ms. Errington completed a Mental Status Questionnaire in August 2013, where she reported that she had seen Plaintiff for 12 sessions, from December 2012 through August 2013. She found that Plaintiff was generally anxious and depressed, with rapid conversation and pressured speech. Plaintiff was hypervigilant, perseverated on physical disorders and issues, and was easily overwhelmed and prone to tangents. Plaintiff's judgment was generally good when expectations were low to moderate; and her ability to remember, understand, and follow directions was generally good unless she was overwhelmed. Ms. Errington thought Plaintiff would do best in a simple, supportive environment. (*Id.*, Tr. 502-03).

On November 7, 2013, Ms. Errington completed a Mental Residual Functional Capacity assessment in which she listed Plaintiff's diagnoses as PTSD and major depression. Ms. Errington opined that Plaintiff would have moderate to extreme limitations in understanding, memory, and sustained concentration and persistence; and mild to extreme limitations in social interaction and adaptation; and she would be unable to work on a sustained basis due to anxiety. (*Id.*, Tr. 671–74).

### 3.    Smitha Patel, M.D.

Psychiatrist Smitha Patel evaluated Plaintiff on March 13, 2013. (*Id.*, Tr. 482–84). During the evaluation, Plaintiff complained of depression and anxiety for the past few months, noting that she had been off work since December due to depression, insomnia, and stress. Plaintiff claimed she was forgetful and no longer able to do simple tasks. Plaintiff said her problems began in the middle of 2012, when she experienced two family deaths, was caring for her sick mother, had a stressful new job, and was worried about her son's safety. (*Id.*, Tr. 482). Dr. Patel found Plaintiff exhibited a depressed mood, intact thought processes, and fair judgment and insight. Dr. Patel diagnosed major depressive disorder and panic disorder with agoraphobia. Dr. Patel assigned a Global Assessment of Functioning (GAF) score of 30 upon evaluation. He continued Plaintiff's medications, prescribed Viibryd for depression, and recommended counseling. (*Id.*, Tr. 483).

Plaintiff continued to see Dr. Patel monthly until November 2013 for medication management. (*Id.*, Tr. 479–81, 576–78). Her mental status examination generally revealed a depressed mood, with coherent speech, logical thought processes, average attention and concentration and good memory. (*See id.*, Tr. 479, 480, 576). Plaintiff told Dr. Patel on July 24, 2013, that she resigned from work the day before, after Cigna denied her disability claim. Plaintiff complained of daily headaches, memory problems, and racing thoughts. On examination, Dr. Patel observed that Plaintiff was alert and oriented, with good memory and fair insight. He increased Plaintiff's dosage of Viibryd. (*Id.*, Tr. 578).

### 4. Memorial Hospital - Physical Therapy

Plaintiff was evaluated for physical therapy on March 7, 2013, due to her complaints of neck pain and headaches. (*Id.*, Tr. 395). On examination, Plaintiff exhibited some weakness in the shoulder muscles. (*Id.*, Tr. 395–97). The therapist recommended a cervical stabilization program to improve Plaintiff's upper back strength and posture. (*Id.*, Tr. 398). Plaintiff participated in three physical therapy sessions and was discharged upon "Patient request," telling the therapist her doctor told her to stop until she gets an MRI. (*Id.*, Tr. 409).

Plaintiff again attended physical therapy in January and February 2014, complaining of muscle spasms. (*Id.*, Tr. 623–35).

### 5. Jennifer Richardson, M.D.

Plaintiff first saw rheumatologist, Dr. Richardson, on March 19, 2014, complaining of chronic pain for years, a history of migraines, and significant stress that required her to resign from her job after 30 years. (*Id.*, Tr. 660–62). Findings on physical examination were generally normal, with normal range of motion, normal muscle strength, stability in all extremities, and no pain or abdominal tenderness on inspection. Plaintiff was oriented, with normal insight and judgment, intact memory, and appropriate mood and affect. (*Id.*, Tr. 665). Dr. Richardson diagnosed fibromyalgia and recommended Lyrica. (*Id.*, Tr. 666).

### 6. CIGNA - Long Term Disability Insurance Carrier

On July 11, 2013, Cigna informed Plaintiff that it had denied her long-term disability claim, finding no evidence showing a mental impairment that would prevent Plaintiff from working in her regular occupation. (*Id.*, Tr. 684–65). Attached to the letter were forms from Dr. Herzog indicating that Plaintiff would be absent due to treatment and or illness one to four

days each month from June 2008 through December 2012, and she would be absent on a full-time basis during portions of February, November, and December 2012, and January, February, May, June, and July 2013; and pay records documenting her absences. (*Id.*, Tr. 688–99).

### 7. George Schulz, Ph.D.

Dr. Schulz evaluated Plaintiff for disability purposes on May 12, 2014. (*Id.*, Tr. 702–13). Plaintiff reported that she was disabled due to depression, anxiety, panic attacks, and PTSD induced by her son's deployment to Iraq. (*Id.*, Tr. 703). Plaintiff also reported suffering from migraines, neck spasms, jaw pain, insomnia, fibromyalgia, ulcers, rectal prolapse, nausea, overall pain, osteoarthritis, a history of vaginal mesh surgeries, and a history of childhood abuse. (*Id.*). She claimed her mental condition began to interfere with her work in 2002, and she left her job at Honda in December 2012, after a mental breakdown. (*Id.*, Tr. 705).

As to her daily activities, Plaintiff reported getting up at 8:00 a.m., stretching, feeding her fish, going to appointments, and going to bed at 11:00 p.m. She participated in on-line social networking and could do word processing and spreadsheets on a computer. She also reported reading the newspaper and books regularly, and watching television. She did not socialize much, but she got along well with neighbors and others. Plaintiff said her stressors include her health, her marriage because of the vaginal mesh, her veteran son, and her mother. She reported managing stress by reading alone. (*Id.*, Tr. 709).

Upon examination, Dr. Schulz found that Plaintiff had a normal gait and posture. She was alert, oriented, and responsive, with no evidence of confusion or lack of awareness. She was cooperative and calm, with a euthymic mood; clear, organized speech; normal memory; and

no indications of anxiety.  (*Id.*, Tr. 709–11).  Dr. Schulz diagnosed panic disorder and unspecified depressive disorder.  (*Id.*, Tr. 711).  He opined that although Plaintiff may experience a subjective sense of reduced effectiveness in the area of maintaining attention and concentration, and in maintaining persistence and pace, to perform simple tasks and to perform multi-step tasks, objective changes at a level prompting concerns by employers are not to be expected.  (*Id.*, Tr. 712).  Dr. Schulz also opined that Plaintiff would likely have some difficulty responding appropriately to work pressure.  (*Id.*, Tr. 713).

### 8.     State Agency Assessments

Two state agency reviewers commented on Plaintiff's mental impairments.  Denise Rabold, Ph.D. reviewed the record On September 7, 2013, and opined that Plaintiff had mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence, or pace; with no episodes of decompensation of an extended duration.  (*Id.*, Tr. 85).  She opined that Plaintiff could perform mildly complex tasks without fast pace or high production rates, although she would be limited to occasional superficial interactions with coworkers, supervisors, and the general public, and she would perform best in a predictable setting where duties are relatively static and changes can be easily explained.  (*Id.*, Tr. 89).  Dr. Rabold found Plaintiff to be only partially credible, noting even though plaintiff reported that she has concentration and memory problems, the medical evidence of record indicates that Plaintiff has average attention/concentration and a good memory.  She does have issues and they do interfere with her ability to work; however, they do not render her totally disabled.  (*Id.*, Tr. 86).  Tonnie Hoyle, Psy.D. made essentially the same findings upon reconsideration of the record.  (*Id.*, Tr. 103–04).

### 9. Appeals Council Exhibits

Plaintiff submitted additional evidence to the Appeals Council following the ALJ's decision. (*Id.*, Tr. 715–36). The additional evidence includes records from Shereen Hashmi, M.D., who saw Plaintiff on May 21, 2014, for a second opinion regarding fibromyalgia and arthritis. On examination, Dr. Hashmi noted Plaintiff appeared well, with a normal gait. She had carpometacarpal joint osteoarthritis and a few osteophytes at the fingers. There was no joint inflammation. Dr. Hashmi agreed that Plaintiff had fibromyalgia, noting "[f]ibromyalgia tender points," but found no evidence of inflammatory arthritis. (*Id.*, Tr. 722–23).

Plaintiff saw Dr. Pulvino on March 10, 2015, due to pelvic pain and dyspareunia. (*Id.*, Tr. 727). After discussing treatment options, Plaintiff declined any intervention, noting that her issues at this point were "fairly mild." (*Id.*, Tr. 728–29).

On March 27, 2015, Nancy Renneker, M.D. a physical medicine and rehabilitation specialist, examined Plaintiff pursuant to a workers' compensation claim. Her complaints included right forearm strain, right radial nerve tunnel syndrome, and right elbow epicondylitis. (*Id.*, Tr. 731). Plaintiff said that while employed at Honda, she was placed on medical restriction due to inability to use her right arm. (*Id.*, Tr. 732). Dr. Renneker rated Plaintiff with a 19% whole person impairment for her right arm injury, based on decreased right arm and grip strength. (*Id.*, Tr. 733).

### D. The Administrative Decision

On August 1, 2014, the ALJ issued an unfavorable decision. (*Id.*, Tr. 26-43). The ALJ determined that Plaintiff had the following severe impairments: depression; anxiety/panic disorder with agoraphobia; diverticulosis; gastritis; pelvic pain status post mesh placement; and

migraines.  (*Id.*, Tr. 28).   The ALJ found that she did not, however, meet the requirements of an impairment listed in 20 CFR Subpart P, Appendix 1.   (*Id.*, Tr. 28).

The ALJ ultimately found that Plaintiff had the residual functional capacity ("RFC") to perform light work.   Specifically, the ALJ found Plaintiff able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday.   Plaintiff is limited to only occasional climbing of stairs and no climbing of ladders.   She is limited to frequent, as opposed to constant, crawling.   She is limited to simple, routine tasks with only occasional changes in a routine work setting, no production rate pace, and only occasional interaction with the public, supervisors, and coworkers.   (*Id.*, Tr. 30). The ALJ opined that because Plaintiff is limited to unskilled work, she is unable to perform her past relevant work as an auto manufacturing coordinator.   (*Id.*, Tr. 37).   The ALJ next found that there are jobs that Plaintiff can perform such as a mail clerk, laundry worker, and molding machine tender, which were not precluded despite his RFC finding.   (*Id.*, Tr. 37).   He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since she attained age 18.   (*Id.*, Tr. 37–38).

## II.   STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

On appeal, Plaintiff alleges that the ALJ erred by: (1) failing to evaluate her alleged impairment of fibromyalgia; (2) "completely" failing to evaluate the medical source opinions and evidence contained in the CIGNA Insurance Disability claim; (3) failing to evaluate Plaintiff's treating sources' opinions from Delia Herzog, M.D., Smitha Patel, M.D., Rebecca Kelly, PT, and Jennifer Errington, LISW-S; and (4) in failing to consider the combined impact of Plaintiff's impairments. (*See generally* Docs. 14, 18).

### A.   Step-Two Analysis of Fibromyalgia

In her first assignment of error, Plaintiff challenges the ALJ's consideration of her fibromyalgia at step two of the sequential evaluation. (Doc. 14 at 11–16). On this issue, the ALJ noted that Plaintiff's "doctor assessed that [she] has fibromyalgia, but there is no evidence of at least eleven positive tender points on physical examination and there is no evidence that other disorders that could cause the symptoms or signs were excluded, as required by SSR 12-p." (*Id.*, Tr. 28). The ALJ thus concluded that Plaintiff's "alleged fibromyalgia is not medically determinable and has not been considered in the residual functional capacity assessment." (*Id.*).

Plaintiff maintains that the ALJ's failure to classify her fibromyalgia as a severe medical

impairment is not supported by substantial evidence.  The Commissioner responds that Plaintiff's diagnosis of fibromyalgia does not comport with the requirements of SSR 12-2p. (Doc. 17 at 21–22).  In particular, the Commissioner asserts that the diagnosis is unsupported by any objective medical findings.  (*Id.*).

    *1.    SSR 12-2p and the Treating Physician Rule*

The Sixth Circuit has recognized that fibromyalgia may be a "severe impairment."  *See, e.g.*, *Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1988).  It is, however, an "elusive" and "mysterious" disease without a known cause or cure.  *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).  Its symptoms include severe musculoskeletal pain, stiffness, fatigue, and multiple acute tender spots at various fixed locations on the body. *Preston*, 854 F.2d at 817.  The presence of these tender spots is the primary diagnostic indicator of the disease, but there is no laboratory test for the disease's presence or severity.  Indeed, physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions.  *Id.* at 818.  Because fibromyalgia is elusive, the Social Security Administration provided additional guidance on the disease in 2012.  *See* SSR 12-2p, 2012 SSR LEXIS 1.

Social Security Ruling 12-2p provides that the Social Security Administration "will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. or section II.B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."  *Id.* at *4–5.  Sections II.A. and II.B. include two sets of criteria for diagnosing fibromyalgia, the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary

Diagnostic Criteria. *Id.* The first set of criteria requires that the claimant demonstrate: (1) a history of widespread pain; (2) at least 11 positive tender points on physical examination and the positive tender points must be found bilaterally, on the left and right sides of the body and both above and below the waist; and (3) evidence that other disorders, which could cause the symptoms or signs were excluded. SSR 12-2p, 2012 SSR LEXIS 1 at *5-7 (§ II.A.1.-3. criteria). The second set of criteria requires that the claimant demonstrate: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p, 2012 SSR LEXIS 1 at *7–9.

In addition, Social Security Ruling 12-2p provides guidance regarding the documentation needed, other sources of evidence, and what can be done if the evidence regarding fibromyalgia is insufficient. In particular, it states:

> C. When There Is Insufficient Evidence for Us To Determine Whether the Person Has an MDI of FM or Is Disabled
>
> 1. We may take one or more actions to try to resolve the insufficiency:
>
> a. We may recontact the person's treating or other source(s) to see if the information we need is available;
>
> b. We may request additional existing records;
>
> c. We may ask the person or others for more information; or
>
> d. If the evidence is still insufficient to determine whether the person has an MDI of FM or is disabled despite our efforts to obtain additional evidence, we may make a determination or decision based on the evidence we have.

*Id.* at *4.

Also relevant here, the Regulations state, "[g]enerally, we give more weight to opinions from your treating source, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairments . . . ." 20 C.F.R. §404.1527(c). The treating physician rule "is based on the assumption that a medical professional who has dealt with a claimant and has his [or her] maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see Lane v. Astrue*, 839 F.Supp.2d 952, 969 (6th Cir. 2012) (citing *Walker v. Secretary of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992)). An ALJ may discount a treating source opinion if she provides good reasons for the weight assigned. *See* SSR 96-2p; *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

### 2. Application

Plaintiff's primary care physician, Dr. Dalia Herzog, diagnosed Plaintiff with fibromyalgia. Plaintiff began treating with Dr. Herzog in August 2006 (*id.*, Tr. 366), and, on April 27, 2014, Dr. Herzog completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)." (*Id.*, Tr. 679–82). Dr. Herzog opined that Plaintiff could work no hours in a day and would likely be absent due to medical impairments or treatment 31 days per month. (*Id.*, Tr. 679). Plaintiff could walk 2 hours during an 8-hour day, for 20 minutes at a time, secondary to pelvic pain, *fibromyalgia*, and osteoarthritis. (*Id.*). Plaintiff could sit for 45 minutes at a time, up to 3 hours total in a workday, secondary to pelvic pain. (*Id.*, Tr. 680). Plaintiff could carry one to two pounds frequently and eight pounds occasionally, secondary to

radial tunnel disease and osteoarthritis. (*Id.*). Plaintiff could occasionally balance, stoop, and kneel, but never climb, crouch, or crawl, secondary to pelvic pain, low back pain, and osteoarthritis. (*Id.*). Plaintiff also is environmentally restricted due to radial tunnel disease, osteoarthritis, and *fibromyalgia*. (*Id.* at 681). Dr. Herzog reported that Plaintiff also suffers from fatigue and depression due to *fibromyalgia* and being diagnosed with major depressive disorder. (*Id.*, Tr. 682). In short, Dr. Herzog found Plaintiff's work abilities extremely limited and identified fibromyalgia as a partial cause.

The ALJ assigned Dr. Herzog's opinion "little weight" for three primary reasons. First, he discredited it because Dr. Herzog "based her opinion in part on the claimant's fibromyalgia, which is not medically determinable." (*Id.*, Tr. 34). This is circular reasoning—the ALJ seemingly rejected Dr. Herzog's diagnosis of fibromyalgia because Dr. Herzog diagnosed Plaintiff with fibromyalgia. Second, the ALJ gave little weight to the opinion because it "is the product of pre-printed form questionnaires, submitted to Dr. Herzog by the claimant's attorney." (*Id.*, Tr. 34). Courts have rejected this rationale for undermining a treating physician's opinion. *See, e.g.*, *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner . . . .The [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (citation and punctuation omitted). Third, the ALJ rejected Dr. Herzog's opinion because he found the following inconsistent: "[T]he doctor opined that the claimant could work zero hours in an 8-hour workday and would miss 31 days of work per month, but she also stated that the claimant

can stand/walk a total of 2 hours in an 8-hour day and sit for a total of 3 hours in an 8-hour day." (*Id.*, Tr. 34). Those two concepts are not necessarily incompatible because Dr. Herzog found Plaintiff limited in a variety of ways—not just in her ability to stand/walk and sit. Accordingly, the undersigned finds the ALJ's reasons for discounting Dr. Herzog's opinion unpersuasive. Further, Dr. Herzog's opinion does not stand alone. In March 2014, Dr. Richardson, a rheumatologist, also diagnosed fibromyalgia. (*Id.*, Tr. 660).[1]

Moreover, courts have been somewhat skeptical when treating physician opinions regarding fibromyalgia have been rejected. The Second Circuit in *Green–Younger v. Barnhart*, 335 F.3d 99, reversed a district court decision in a fibromyalgia case because the ALJ failed to give controlling weight to the assessment of a treating physician. The Court rejected the Commissioner's arguments that the treating physician's opinion regarding the limitations caused by the claimant's fibromyalgia constituted an opinion on the ultimate issue of legal disability, an issue for determination by the ALJ. *Id.* Rather, the Court concluded that the assessment regarding the claimant's inability to function at normal levels because of persistent severe pain, notably the limitation on her ability to sit or stand for long periods of time, constituted an opinion on the issue of the nature and severity of the claimant's impairments. *Id.* 106–07. Under the Regulations, such an opinion by the treating physician could be afforded controlling weight. *Id.* The Court then went on to reject the ALJ's finding that the treating physician's opinion did not have the support of sufficient medical evidence. In doing so, the court acknowledged that the medically acceptable clinical and laboratory diagnostic techniques for fibromyalgia are different from those applicable to other impairments. *Id.*

---

[1] Shereen Hashmi, M.D., confirmed the diagnoses in May 2014, and noted "[f]ibromyalgia tender points." (*Id.*, Tr. 722–23). The parties dispute, however, whether this Court may consider Dr. Hashmi's opinion. The undersigned

Of note, the Second Circuit's *Green–Younger* decision relies heavily upon the decision of the Sixth Circuit in an earlier fibromyalgia case, also relied by Plaintiff in this case, *Preston v. Secretary of Health and Human Services*, 854 F.2d 815 (6th Cir. 1988). The Sixth Circuit in *Preston* was one of the first courts to recognize that fibrositis, now more commonly known as fibromyalgia, defies diagnosis or assessment by traditional medical diagnostic techniques. *Id.* at 819–20. In *Preston*, as in *Green–Younger*, the Sixth Circuit reversed the district court because it found that the ALJ's rejection of the treating physician's opinion constituted reversible error. Given the nature of the disease, the Court concluded that the treating physician "had done all that can be medically done to diagnosis Preston's fibrositis and to support his opinion of disability." *Id.* at 820; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861–62, (6th Cir. 2011) (finding that the ALJ erred by rejecting "the treating physicians' opinions as unsupported by objective evidence in the record" and noting that the ALJ had a "fundamental misunderstanding of the nature of fibromyalgia").

The Commissioner seems to attempt to distinguish such cases by arguing that the record here insufficiently showed that Plaintiff has fibromyalgia. (Doc. 17 at 23). Specifically, the Commissioner states that "there are medically-accepted and recognized signs of fibromyalgia, including tenderness at focal points, complaints of fatigue, and importantly, evidence showing that other alternative explanations have been eliminated." (*Id.* (citing *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007)). The Commissioner argues that the record here is devoid of such objective evidence.

---

concludes Dr. Hashmi's opinion is not critical to the resolution of this case and consequently does not consider it even though it supports the undersigned's ultimate decision.

As an initial matter, the Court rejects the Commissioner's conclusion. The record is full of reports of pain and fatigue. But even assuming a slighter record of fibromyalgia in this case than in the cases cited above, the undersigned concludes that the ALJ should have used the mechanism provided for in Social Security Ruling 12-2p to resolve any insufficiency. As explained, the Regulations make clear that an ALJ can—and should—seek additional evidence when the record on fibromyalgia is too thin. Dr. Herzog, who specifically included the diagnosis and treatment of fibromyalgia, treated Plaintiff continuously for over eight years. Time and again, her examinations revealed pain. (*See, e.g.*, *id.*, Tr. 7, 12, 329–77, 552-74, 658, 719, 724-26). Dr. Herzog treated Plaintiff's fibromyalgia with physical therapy and medication to no avail—the treatments gave Plaintiff no more than short-term relief. (*See id.*). Consequently, Dr. Herzog's records and Dr. Richardson's confirmatory opinion were enough for the ALJ to need to consider fibromyalgia more completely.

The Commissioner additionally argues that Plaintiff's lack of credibility supports the ALJ's decision to classify fibromyalgia as non-severe. That, however, was not the ALJ's rationale. He made no mention of Plaintiff's credibility at step two, instead reserving that discussion for his RFC analysis. (*Id.* at 28; *id.* at 31–32). Indeed, the ALJ found Plaintiff not credible at step four, in part, because he found her allegations of physical pain inconsistent with the "objective and clinical evidence." (*Id.* at 32). By that point, however, the ALJ already had concluded that Plaintiff's fibromyalgia was non-severe. Moreover, considering the record as a whole, the undersigned finds the attacks on Plaintiff's credibility inadequate to save the ALJ's step-two analysis regarding fibromyalgia.

For these reasons, the ALJ's consideration of Plaintiff's fibromyalgia is inconsistent with the legal standards applicable for determining the weight to be given to treating physicians' opinions in fibromyalgia cases and lacks the support of substantial evidence. Consequently, the undersigned recommends remand.

## B. Remaining Assignments of Error

Plaintiff raises three additional assignments of error. The Court's decision to reverse and remand on Plaintiff's first assignment of error alleviates the need for analysis of Plaintiff's remaining assignments of error. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's Statement of Errors be **SUSTAINED** and the case be **REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g), Sentence Four for reconsideration of Plaintiff's alleged fibromyalgia.

## <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive

further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date:  May 31, 2017                    /s/ Kimberly A. Jolson
                                       KIMBERLY A. JOLSON
                                       UNITED STATES MAGISTRATE JUDGE